The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
Accordingly, the Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties as
STIPULATIONS
1. At the time in question the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employment relationship existed between plaintiff-employee and defendant-employer.
3. Royal Insurance Company was the compensation carrier on the risk.
4. Plaintiff earned a sufficient average weekly wage so as to entitle him to the maximum weekly compensation rate then statutorily applicable or $390.00 per week.
5. On August 10, 1990 plaintiff sustained an injury by accident arising out of and in the course of his employment.
* * * * * * * * * * * * * *
The Full Commission adopt as their own all findings of fact found by the Deputy Commissioner, with technical modifications and the addition of Finding of Fact Number 12, as follows:
Based upon the competent and convincing evidence adduced at the hearing, the undersigned make the following additional
FINDINGS OF FACT
1. Plaintiff is an unemployed, 52 year-old male who completed the tenth grade and is able to read and write to at least some extent. (See the stipulated medical evaluation of Crawford and Company's vocational consultant, Kim Keegan). He has not since received any type of further formal education and/or vocational or technical training; but rather, any skills that he has are the result of on-the-job training or self taught ones such as the ability to read and to write to at least some extent, which he required in order to be able to keep his men's time records.
2. Plaintiff has been involved in the electrical construction trade for more than 30 years, requiring him to be able to engage in the physical activities of bending, stooping, lifting, crawling, climbing, pushing and pulling at times. The only other work he has ever done is a job that he had at a poultry processing plant when he was 17 years of age.
3. Defendant-employer is an electrical contractor. In March of 1989, plaintiff became employed thereby as electrical superintendent on Phase I of the Roanoke-Chowan Hospital job. He was not only responsible for supervising work of the regular line employees, which accounted for 75 percent of his time and required him to keep their time records, but also for engaging in some of the actual electrical work, which accounted for his remaining 25 percent of the time. During the majority of his career in the electrical construction trade, plaintiff has been employed either as a supervisor or working supervisor. He did not have an antecedent history of significant back problems prior to the August 10, 1990, date in question.
4. While on a ladder attempting to wire in some overhead lighting on the same hospital job, plaintiff fell off the ladder sustaining the admittedly compensable injury by accident giving rise hereto. This accident occurred when one of the foremen turned on the power to the lines he was handling. It resulted not only in compression fractures of the T4 level of his thoracic spine and L4 level of his lumbosacral spine from striking the concrete floor below but also a partial tear of the triceps muscle of the right arm at its insertion at the elbow from severe muscle spasm induced by the electrical shock. This subsequently required him to undergo exploration and repair of the same tear on October 4, 1990.
There is no convincing evidence, however, that plaintiff continues to experience any problems with his right arm or has sustained any permanent disability to the same extremity. According to the credible and convincing evidence, he recovered from that injury with corrective surgery and no longer experiences any significant right arm problems.
5. As a result of his injuries, plaintiff was admitted to the hospital under the care of Dr. Robert C. Kahn, a general surgeon, and remained there for a week until his discharge on August 17, 1990.
6. Despite the involved injuries, following his hospital discharge plaintiff was able to return to light duty work for defendant-employer supervising the remainder of the Phase I job at the hospital and to continue regularly working there until on or about November 29, 1990. At that time, the job was completed, and he and other employees were laid off.
7. After he was laid off plaintiff filed for and received the maximum number of weeks possible of unemployment security benefits entitling defendant-employer to deduct the same benefits from any award of temporary-total disability pursuant to the provisions of G.S. 97-42.1. Plaintiff acknowledges receiving some $12,000.00 in unemployment security benefits. This amount far exceeds any amount that he would otherwise be owed for temporary-total disability prior to December 28, 1990 (It was at that time that plaintiff reached maximum medical improvement from the involved injury and was capable of returning to his regular electrical superintendent's job had he not earlier been laid off when Phase I of the hospital job was complete, as well as capable of returning to the same type of electrical construction work he had done during most of his 30 years as a supervisor or working supervisor or returning to any other work not involving heavy labor inconsistent with the physical limitation described in Finding of Fact Number 9.)
By filing for and receiving unemployment security benefits plaintiff certified he was ready, willing and able to return to work and his testimony otherwise that he was not really able to work is not accepted as credible or convincing. Plaintiff, however, made no real reasonable effort to find suitable work after he was laid off from defendant in November of 1990 and released by Dr. Kahn to return to his regular electrical superintendent's job on December 28, 1990 and began receiving unemployment security benefits.
8. By December 28, 1990 when Dr. Kahn released him from his care, plaintiff had reached maximum medical improvement and/or the end of the healing period from and following the August 10, 1990 injury by accident giving rise hereto, at which time he retained a thirty-five (35) percent permanent-partial disability of the back as a result of the thoracic and lumbar compression fracture sustained on the same date. However, as previously stated, there is no credible or convincing evidence that he retains any permanent-partial disability from the partial triceps muscle tear sustained on the same date requiring him to undergo surgical repair.
9. As indicated by the stipulated estimated Functional Capacity Form of the same date (December 28, 1990) by Dr. Kahn, not only was plaintiff capable of returning to his former job as an electrical superintendent for defendant-employer, (which is essentially the same type of work he has done during most of the majority of his 30 years of electrical construction work) but also plaintiff was capable of doing other work within the same forms restrictions, which essentially involved medium level work allowing him to lift up to 50 pounds occasionally, carry up to 34 pounds occasionally, push and/or pull from sedentary or standing positions, occasionally bend, squat, crawl, climb and reach above shoulder level and to sit, stand, walk and/or alternatively sit/stand for up to two hours with rest periods and which did not require prolonged bending or stooping or heavy lifting.
10. Plaintiff, however, has not made any substantial or reasonable effort to find employment since being laid off from defendant's employ in November of 1990 and since reaching maximum medical improvement from the involved injury a month later. Rather, he maintains he is unable to return to the type of electrical work he has done for the majority of the last 30 years or to any other work because of his permanent back injury. This statement is contrary to the credible and convincing medical and other evidence otherwise that he is in fact capable of some work and of returning to his regular job as an electrical superintendent. The only attempts at work that plaintiff has made since are the one day when he did electrical work for another electrical contractor, Michael Harrell, and the two days that he helped another friend during a shutdown at the Perdue plant. Plaintiff has not sought assistance from North Carolina Vocational Rehabilitation in obtaining suitable employment and is only limited from engaging in heavy labor because of his permanent back injury. According to plaintiff's own testimony, with his reputation as a superintendent and as an electrician and with what he has learned over the years, he could go back to work anywhere for any electrical firm or at any plant as a maintenance supervisor or maintenance engineer if he chose to do so. Plaintiff, however, has not tried to go back to work. Rather, he contends that he is physically unable to because of the permanent back injury involved, which, as previously stated, is contrary to the credible and convincing medical and other evidence otherwise that he is in fact capable of working were he to attempt to find work. There is no competent, convincing credible medical or other evidence that non-heavy electrical construction work as a supervisor or working supervisor or other non-heavy work is not available for someone of plaintiff's age, education, background and work experience — much less that plaintiff could not obtain the same work if he merely attempted to do so. There is no credible or convincing medical or other evidence that it would be futile for plaintiff to attempt to find less than heavy labor work in the electrical construction trade or elsewhere.
11. Since reaching maximum medical improvement and/or the end of the healing period from and following the involved injury on December 28, 1990 and his release from Dr. Kahn's care, plaintiff has not sustained a substantial change for the worse in his condition. Although because of his continued complaints plaintiff, either on his own or upon Dr. Kahn's referral, has been seen by other physicians for the purpose of evaluation, including Drs. Marsigli, Leonard, Byrd and Crisp, none of them had any continuing treatment to offer him for his injuries other than of a symptomatic nature nor did any indicate that he was suffering from incapacitating pain resulting in him being unable to return to other than heavy work.
12. The undersigned do not ignore or belittle the fact that plaintiff is still suffering from pain and will continue to have pain symptoms. However, since plaintiff is capable of earning wages in some capacity, the undersigned feel that follow-up rehabilitation by way of an Industrial Commission rehabilitation nurse would be helpful to plaintiff.
* * * * * * * * * * * * * *
Based upon the findings of fact as found by the Deputy Commissioner and adopted by the Full Commission, the Full Commission find as follows:
CONCLUSIONS OF LAW
1. For the reasons described in the above Findings of Fact, plaintiff is not totally and permanently disabled as a result of the injury by accident giving rise hereto. Russell vs. Lowe,108 N.C. App. 762 (1993).
2. Because the unemployment security benefits that plaintiff received far exceed any amounts that he might otherwise be due for temporary-total disability immediately following his injury and the resulting deduction allowed by G.S. 97-42.1, plaintiff is not entitled to an award of temporary-total disability benefits for the involved injury. G.S. 97-42.1.
3. As a result of the injury by accident giving rise hereto plaintiff retains a thirty-five (35) percent permanent-partial disability of the back entitling him to 105 weeks of compensation at a rate of $390.00 per week commencing as of December 28, 1990 when he reached maximum medical improvement and/or the end of the healing period from and following the injury by accident giving rise hereto. Plaintiff has not since sustained a substantial change for the worse in his condition.
4. There is no convincing evidence that plaintiff retains any permanent-partial disability as a a result of the right arm injury sustained on August 10, 1990.
5. Although plaintiff still suffers from pain symptoms, in order to be permanently and totally disabled and to thus be entitled to benefits under G.S. 97-29, plaintiff must be disabled with the meaning of G.S. 97-2(9), which defines "disability" as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." Plaintiff, through medical or any other evidence, did not sufficiently or convincingly establish that he is unable at this time to ever do any work or that he has completely lost his wage-earning capacity or ability to earn wages.
6. In order to assist plaintiff in a possible return to employment or in obtaining assistance in a program such as North Carolina Vocational Rehabilitation, the undersigned feel that plaintiff would significantly benefit from the rehabilitation services of an Industrial Commission rehabilitation nurse.
7. To the extent the same are reasonably designed to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith, plaintiff is entitled to all reasonable and necessary medical expenses incurred or to be incurred by plaintiff.
* * * * * * * * * * * * * *
Based upon these conclusions of law, the Full Commission have determined there exists no basis for amending the Award except for the addition of Paragraph Three. Accordingly, the foregoing stipulations, findings of fact, and conclusions of law engender the following:
AWARD
1. Defendants shall pay plaintiff, on account of his thirty-five (35) percent permanent-partial of the back, 105 weeks of compensation at a rate of $390.00 per week commencing as of December 28, 1990. Such compensation having accrued the same shall be paid in lump sum, without commutation, subject to a reasonable attorney fee hereinafter approved.
2. To the extent the same was reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith defendants shall pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the injury by accident giving rise hereto when bills for the same are submitted on proper forms, through defendant-carrier, to the Industrial Commission for approval and are approved by the Commission.
3. A copy of this Award shall be forwarded to the Industrial Commission's Medical Rehabilitation Department of the purpose of assignment of a rehabilitation nurse to assist plaintiff in his rehabilitation efforts. Any medical or other expenses associated with these efforts shall be borne by defendants.
4. Defendants shall bear the costs of Commission proceedings.
This the __________ day of ________________________, 1995.
 S/ _______________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ _______________________ J. RANDOLPH WARD COMMISSIONER
S/ _______________________ COY M. VANCE COMMISSIONER
JHB/nwm